THOMAS NILES *vs.* ISAAC PATCH.

The declarations of one occupying land under a bond for a deed are admissible in evidence of the boundaries of the land against a stranger, in favor of one who afterwards takes an assignment of the bond from such occupant, and a deed directly from the obligor.

A conveyance of land, "bounded westerly by the beach," does not include the land between high and low water mark.

In an action for breaking and entering a close, the title to which is disputed, a witness, who has testified that he was in the habit of going upon the premises, cannot be asked "what he used to go there for," for the purpose of showing that he and all the neighbors were in the habit of using the land as common property.

In an action of trespass on land, evidence of declarations of a person, who formerly occupied it under a bond for a deed from the defendant, that he did not own the land in dispute, is inadmissible, if that person has not been called as a witness, and no evidence has been introduced that he ever did own the land.

In an action for trespass on land, the testimony of a former occupant, that he had a controversy and suit at law with the defendant concerning the land, is admissible in evidence; and the admission of such testimony as to the settlement of that suit is no ground of exception by a party who did not specify, as his ground of objection, that the record of the suit would be better evidence.

At a town meeting, the town, under an article to see if they would discontinue a town way, voted "to leave it to the discretion of the selectmen;" and at a meeting subsequently called "to see if they would accept the doings of the selectmen in discontinuing the road," the selectmen reported that the way should be discontinued, and the town accepted their report. *Held,* that the way was legally discontinued.

SHAW, C. J.   The present case comes before us on a writ of review, sued out by Niles in pursuance of an authority for that purpose granted by this court on his petition.   The purpose of this review was to obtain a new trial of an action commenced by the plaintiff against Patch, in which a verdict had been given, and judgment recovered for the defendant for costs.   The action has been again tried on the original pleadings before Mr

Justice Merrick in Essex, and a verdict returned for the plaintiff, to avoid which the defendant has filed a bill of exceptions.

It appears that the declaration was in tort, and contained two counts : 1st. For pulling down, carrying away and converting to his own use a gate and part of a wall, situated and standing across the entrance to and near the northern entrance upon a tract of beach in Gloucester called Long Beach; 2d. For entering the plaintiff's close in Gloucester aforesaid, " bounded and described as follows; namely, northerly by land of said Patch, easterly by other land of said Niles, southerly and southwesterly by the sea," and taking and carrying away seaweed and sand, belonging to the plaintiff, there being, and converting the same to his own use.

By the answer, the defendant denies that he converted to his own use or carried away any gate or wall, the property of the plaintiff; although he admits that, to abate a nuisance, he did take down a certain gate and portion of wall erected by the plaintiff.

By an amended and substituted answer to the second count, the defendant denies that the close is the close of the plaintiff; says that it is his own soil and freehold, and was in his possession, or of those under whom he held, under a claim of right, for more than twenty years before the time of the alleged breaking, and has so continued. He admits that he has taken sand and seaweed from a portion of Long Beach, which he believes to be the close described in the declaration, and says that said sand and seaweed were his own property, and that he rightfully converted the same to his own use, and denies that he ever broke or entered any part of any close of the plaintiff situated in Gloucester.

From these pleadings and the bill of exceptions, it appears that the main question was, whether the plaintiff owned or had exclusive possession of the beach which is the close in question. It is difficult to render the points in controversy intelligible without a knowledge of the localities, derived from plans and surveys. It appears that formerly there was a town way, which had been laid out in 1728, along and over the said beach to the

farm at Eastern Point owned by the plaintiff; that the gate in question stood on and across said town way, at or near the entrance upon said beach, at the northerly end thereof. It further appears that in 1845 this town way was discontinued, by a vote of the town passed at the request of Niles; but it is denied by the defendant that this was a legal and valid discontinuance, and this is one of the questions presented by the exceptions. From this statement it is manifest that, to maintain his action, the plaintiff must prove title to the *locus* in himself, or exclusive and adverse elder possession; and to establish a justification on the part of the defendant, in support of his plea of soil and freehold in himself, the burden of proof was on him.

It appears by the exceptions, that in 1834 J. P. Cushing owned the farm at Eastern Point, now owned by the plaintiff, and then gave a bond for a deed of the same to Boynton; that Boynton assigned the same to Greenleaf, who held the bond and occupied the farm for some time, and then negotiated for a sale of the farm to the plaintiff; but as the fee still remained in Cushing, his bond to convey, by a mutual arrangement, was cancelled; and the deed was made directly by Cushing to the plaintiff in 1844.

1. The first question arises thus; the plaintiff was examined as to his exclusive possession, and, in the course of his examination, he was asked by his counsel " whether, when he purchased said farm, Greenleaf had pointed out to him the limits of the farm, and, if so, what those limits were." This was objected to, but admitted. The objection seems to have been that it was hearsay, and not under oath; and further, that all such representations must be considered as merged in the deed subsequently given.

We are of opinion that the evidence was of very little importance, especially as Greenleaf was afterwards called and testified fully. But it seems to us not to have been incompetent. Greenleaf was in possession several years under an equitable title. But that possession was absolute and exclusive whilst it continued. The declaration of a tenant, whilst in pos-

session, is a verbal act, qualifying the act of possession, and has some tendency, often very small, to prove the bounds and limits of his possession.

As to its being part of a negotiation which terminated in the execution of a deed, the technical answer is, that the deed was not given by Greenleaf, but by Cushing; and Greenleaf stood in the relation of a prior party, in possession, making a declaration as to the nature and limits of his possession, whilst it lasted, and his declaration was not a part of the negotiation merged in the deed.

2. The next question turns upon the answer of the defendant, by which he proposes to justify the act of breaking and entering the close, consisting of the tract of beach over which the tide ebbs and flows, by proving soil and freehold in himself. For this purpose, he gave in evidence a deed from Giles to himself, referring for description to a deed from Wonson to Giles, in which the land is thus described : " The fourth tract of said land is bounded westerly by the beach, northerly by land of said James Pearson deceased, easterly by the same, and southerly by land belonging to the estate of Daniel Rogers deceased."

The body of the tract thus described is easterly of the Long Beach, and the question is, whether, by making the beach a westerly boundary, without any other expression in the context or in any other part of the deed, such a description includes the beach. " Beach," in its ordinary signification, when applied to a place on tide waters, means the space between ordinary high and low water mark, or the space over which the tide usually ebbs and flows. It is a term not more significant of a sea margin, than " shore ; " and bounding " on the shore " does not include the shore. *Storer* v. *Freeman,* 6 Mass. 435 Had the term been " sea," or " salt water," or " bay or harbor," it might have brought the grant within the operation of the colony ordinance, and carried the beach or flats, if the grantor owned it. We would not say that there might not be such terms in the deed, as, connected with the term " beach," would indicate an intent to include the beach ; and such intent, if anywhere

22 *

manifest in the deed, would govern its construction and con-
vey the beach. But in this deed there is no such qualification,
and therefore the court are of opinion that the defendant did
not acquire by it a title in fee in the beach. *Doane* v. *Willcutt*,
5 Gray, 328.

3. One Story, a witness called by the defendant, who had
stated that he was in the habit of going upon the *locus*, was
asked what he used to go there for — with a view to show that
he, as one of the neighbors, had been in the habit of going
upon the beach for the purpose of taking sand and seaweed,
when he thought fit. This question was objected to and not
admitted.

The purpose for which the question was put, as above stated,
does not appear to have been stated at the time; nor if he had
such intention, that he did anything; it was an inquiry as to
his mere naked and secret intention. As such, we think it was
rightly rejected. Had the question been of acts done, of his
taking sand and seaweed, then it might have been proper to ask
in what manner, whether with or without a team, openly or
covertly, often or rarely, with or without notice to any persons
and to whom, indicating whether or not these acts were done
under any adverse claim or claim of right, and it would have
presented the question of admissibility in a very different aspect.

4. Another exception is thus stated: " The defendant intro-
duced one Small as a witness, and proposed to show by him
that Greenleaf, while in the occupation of the farm, had told
him (Small) that he did not own that portion of the beach
which was in dispute. This was objected to by the plaintiff
and the objection was sustained. But," as the bill of excep-
tions goes on to state, " this objection was made before Green-
leaf had been called as a witness, and before any evidence of
his possession of this part of the farm had been offered by the
plaintiff.

" At a subsequent stage of the trial, Greenleaf was called
as a witness, and testified, in substance, that he occupied the
*locus* several years as part of the farm, and had exclusive pos-
session of it; that he had a controversy with Patch concerning

it, and brought an action against him for trespassing upon it by taking sand and seaweed therefrom, and that suit was settled upon Patch's giving him a release of all claim to the *locus ;* and that Patch never afterwards did anything thereon, or claimed any right thereto, to his knowledge."

As to the exception, that the testimony of Small ought to have been admitted, we are of opinion that the rejection was right. It could not be admissible to contradict Greenleaf, for Greenleaf had not then testified ; nor was it again offered after Greenleaf had testified. .

It could not be admitted to contradict the plaintiff, for several reasons : 1st. It did not contradict him. The plaintiff testified that Greenleaf, when in possession, had pointed out the bcunds ; the evidence offered was, that he said he never owned the land. These were not contradictory ; he had no legal title, and, in strictness, did not own any part of the estate. 2d. The declaration of Greenleaf, testified of by the plaintiff, was made at a different time from that offered to be given in evidence. 3d. If it became material in consequence of the testimony afterwards given by Greenleaf, Small should have been recalled.

As to the testimony actually given by Greenleaf, of the controversy with Patch, and the suit and settlement of it, the fact of the controversy with Patch was competent, as the acts and declarations of the party to the suit, offered by the adverse party, by way of admission or confession. As to what he testified respecting a suit at law, and the settlement of it, if it had been objected to on the ground that it was not the best evidence, and that the record ought to be produced, it would perhaps have been a good objection to the *viva voce* testimony on the point ; but no such objection was made.

5. Another exception turns upon the question whether the town way over Long Beach had been legally discontinued. The court ruled that it had been, and to this the defendant excepted. From the records of the proceedings of the town of Gloucester, it appears that in April 1845 Niles applied to the selectmen to insert an article, in the warrant for a town meeting, to act upon the petition of said Niles, requesting the town

either to repair the said town way or discontinue it. This ar ticle was inserted accordingly: " To hear the request of Thomas Niles, asking the town to repair the road on Eastern Point from the north end of the beach to his house, or to discontinue the same as a town's road." At the meeting held pursuant to said warrant, it was voted " to leave it to the discretion of the selectmen."

For the ensuing meeting in June, an article was inserted in the warrant " to see if the town will accept the doings of the selectmen, in discontinuing the road on Eastern Point, from the gate at the north end of Long Beach southerly to the dwelling house of Thomas Niles, agreeably to his petition." At the meeting, the selectmen made their report, reciting that, having viewed the premises and given notice to all parties interested, they were of opinion that public necessity and convenience did not require the road, and recommended that it be discontinued as a town way. At the same meeting, on this article, by the vote of the town, the report of the selectmen was accepted.

The court are of opinion that this was a regular discontinu- ance of the way from the gate at the north end of the beach to Niles's house southerly. By the Rev. Sts. *c.* 24, § 70, " any town, at any meeting regularly called for that purpose, may dis- continue any town way or private way."

It was objected in the argument, that selectmen cannot initiate proceedings for the discontinuance of a town way. Whatever might be the force of this argument, if founded in fact, is imma- terial; *the selectmen did not initiate* these proceedings; it was done by a petition to the town, and a vote thereon by the town to leave it to the discretion of the selectmen.

The next meeting was called by warrant of the selectmen, among other things, to see if the town will accept the doings of the selectmen, in discontinuing the road. At the meeting held pursuant to this warrant, on taking up this article, the report of the selectmen was accepted.

Here the meeting was called for the purpose of determining whether the way should be discontinued, and the statute in that respect was complied with.

The selectmen had been invested with full discretionary power to act; they decided, as far as in their power, that the road was not of common convenience and necessity, and recommended its discontinuance. These " doings " were expressed in their report; under the notice in the warrant, the vote was an affirmance of their doings and a discontinuance of the way.

The only question, we thought, which could be raised was, whether, in strict parliamentary law, that is, the general law of usage governing aggregate deliberative bodies, the acceptance of the report of a committee is an affirmance, by the constituent body, of the matters contained in it, or an act giving effect to all the measures proposed by it to be done. But when a matter is referred to a committee, especially when such committee is a recognized, permanent department of such corporation, like selectmen, directors, &c., with authority to take or propose some definite action on the subject, and they make a report proposing such definite action, without reporting any separate vote or resolution, for more effectually carrying the proposed measure into effect, a vote of the body, accepting such report, is of itself an adoption and execution of the measure proposed on the part of the constituent body. And we think such has been generally the understanding and practice of corporations, and aggregate bodies generally, in which the will and power of the body are ascertained and exercised by vote, and especially of municipal corporations. See Cushing's Manual, § 295.

But however this may be, as a general rule, we think the proceedings in this case were peculiar; and taking the petition, the reference with discretionary power, the report and the warrants, the plain and natural construction of the vote of the town was, to accept the doings of the selectmen in discontinuing the way definitely described, in other words a vote to discontinue the way. Such being the intent and effect of the vote of the town, the way was thereby legally and effectually discontinued.

*Exceptions overruled.*

*S. H. Phillips & J. A. Gillis,* for the defendant.

*O. P. Lord,* for the plaintiff.